**Sakil SHEIKH and Saaedahmed
Rasheed Sheikh, Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; U.S. Citizenship and Immigration Services, Defendants.**

**No. CV 09–5330 SVW (RCx).**

United States District Court,
C.D. California.

Dec. 15, 2009.

Wade J. Chernick, Wade J. Chernick Law Offices, Encino, CA, for Plaintiffs.

Jonathan D. Wasden, United States Department of Justice, Washington, DC, Kevin B. Finn, AUSA–Office of U.S. Attorney, Los Angeles, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION [5]

STEPHEN V. WILSON, District Judge.

### I. Introduction

Plaintiffs' Complaint asks this Court to review the United States Customs and Immigration Service's ("USCIS") decision to deny the reinstatement of an I–130 Immigrant Petition for Relative that was filed by Najma Sheikh, a United States lawful permanent resident, on behalf of her brother, Plaintiff Saaedahmed Rasheed Sheikh. The Petition was automatically revoked upon Najma Sheikh's death. USCIS subsequently denied reinstatement of the Petition under 8 C.F.R. § 205.1(a)(3)(i)(C), ultimately concluding that humanitarian grounds did not warrant reinstatement in Plaintiffs' case. Plaintiffs contend that USCIS's decision was an abuse of discretion.

The Department of Homeland Security and USCIS (collectively "Defendants") bring this Motion to Dismiss, arguing that the Court lacks jurisdiction under the Administrative Procedures Act to review USCIS's decision to deny the reinstatement of the I–130 Petition.

### II. Factual Background

Plaintiff Saaedahmed Sheikh[1] is a non-United States citizen living in India.

---

1. Because many of the parties share the same last name, for clarity's sake, the Court at times refers to persons in the Sheikh family by their first names.

(Compl. ¶ 2.) Much of his immediate family had immigrated to the United States over the past few decades, including his mother, father, sister, and brother. (*See id.* ¶¶ 4–6, 9.) In November of 1991, Saaedahmed's sister, Najma Sheikh, filed an I–130 Immigrant Petition for Relative on Saaedahmed Sheikh's behalf. (*Id.* ¶ 4.) The petition was approved by United States Customs and Immigration Services (USCIS) on February 10, 1992. (*Id.*) On March 28, 1998, prior to the time a visa became available for Saaedahmed and while he was still living in India, Najma Sheikh died. (Compl. at 17 [Death Certificate].) USCIS revoked the approved visa petition in January 2006, in light of Najma Sheikh's death. (Compl. ¶ 7.)

On February 21, 2001, Saaedahmed's mother, Nasimabibi Sheikh, filed an I–130 Immigrant Petition for Relative on Saaedahmed's behalf, which was subsequently approved. (Compl. ¶ 5.) On October 7, 2005, Nasimabibi Sheikh died. Upon her death, USCIS revoked the approved visa petition. (*Id.*)

In December 2005, just prior to the revocation of these two I–130 Petitions, Saaedahmed's brother, Plaintiff Sakil Sheikh (who was also a U.S. lawful permanent resident), sent a letter to USCIS informing them of the deaths of his mother and sister. (Compl., Exh. C.) In this letter, Sakil requested that the Agency reinstate for humanitarian reasons the first Petition filed by his sister, Najma Sheikh, on Saaedahmed's behalf, with its original priority date of November 1991. (*Id.*) Sakil requested that he be allowed to step in his sister's shoes as the petitioner for his brother Saaedahmed, and stated that he would be financially responsible for Saaedahmed. (*Id.*) In January 2006, USCIS issued a Notice of Decision denying the request for reinstatement. (Compl., Exh. D.)

On April 4, 2007, Plaintiff Sakil, through counsel, again sent a letter to USCIS requesting reinstatement of the November 1991 immigrant visa petition filed on Saaedahmed's behalf, pursuant to 8 C.F.R. § 205.1(a)(3)(i)(C) "in the exercise of discretion and for compelling humanitarian reasons." (Compl. ¶ 8, Exh. E.) Sakil stated that his father was gravely ill with lung cancer and heart disease, and provided evidence from a Theology Professor, who attested to the importance in the Muslim culture of children tending to their parents when the parent is near death. (*Id.*) Sakil again requested to step in the shoes of his deceased sister as the petitioner for Saaedahmed. (*Id.*)

The USCIS denied this second request on March 17, 2009. (Compl., Exh. I.) In its Notice of Decision, the USCIS concluded that humanitarian reasons did not warrant reinstatement of the petition under 8 C.F.R. § 205.1(a)(3)(i)(C). In so doing, USCIS cited seven factors from the Department of State's Foreign Affairs Manual, which the Agency commonly uses to make the "humanitarian reasons" determination. (*Id.*) On balance, USCIS concluded that the application of the factors to the Sheikh family did not weigh in favor of reinstatement. (*Id.*) Specifically, USCIS noted (among other things) that although Saaedahmed's father and brother were living in the United States, his immediate family, including his wife and children, were with him in India. USCIS also pointed to the fact that although Saaedahmed's father was gravely ill, he already had one son in the United States who was caring for him adequately. (*Id.*)

Plaintiffs filed the present action on July 22, 2009, seeking review of USCIS's decision denying reinstatement of the November 1991 Immigration Petition for Relative for Plaintiff Saaedahmed on humanitarian grounds pursuant to 8 C.F.R.

§ 205.1(a)(3)(i)(C). Plaintiffs argue that USCIS abused its discretion in refusing to reinstate the Petition.

Defendants move to dismiss the Complaint on the grounds that this Court lacks jurisdiction to review the decision of the USCIS under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, 702. This Motion raises complex issues of administrative and immigration law, and requires the Court to examine an immigration code that "is notoriously complicated and has been described as 'second only to the Internal Revenue Code in complexity.'" *Hovhannisyan v. U.S. Dep't of Homeland Sec.,* 624 F.Supp.2d 1135, 1142 (C.D.Cal.2008) (quoting *Singh v. Gonzales,* 499 F.3d 969, 980 (9th Cir.2007)).

### III. Overview of the Relevant Statutory Framework

Because Defendants' Motion challenges this Court's jurisdiction to review the decision of USCIS not to reinstate the Petition on Plaintiff's behalf after his sister's death, it is critical to understand USCIS' authority to deny reinstatement of the Petition. Thus, the Court begins with a brief overview the process for family preference petitions under the Immigration and Nationality Act ("INA"), and the statutory and regulatory framework relevant to USCIS's action in this case.

#### A. Petition Process Generally [2]

To enter and remain in the United States, Congress requires each alien to possess a valid visa conferring immigrant or non-immigrant status. 8 U.S.C. §§ 1182(a)(7)(A) and (B). Congress has established several different categories of "immigrant visas." The family-based immigrant visa categories require a United States citizen or lawful permanent resident "petitioner" to file a Form I–130 with US-CIS to classify the intended alien beneficiary under one of the congressionally-created immigrant relative categories under the INA. 8 U.S.C. §§ 1153(a)(1), 1154(a)(1)(A)(i) and (a)(1)(B)(i)(I). There are various categories for spouses, parents, children, and siblings.

The filing date of a petition constitutes the "priority date" and establishes the alien beneficiary's spot in the waiting line for an immigrant visa. 8 C.F.R. § 204.1(c). Once the petition is filed, US-CIS must investigate to determine if the petitioner has alleged true facts and whether the intended beneficiary qualifies for the benefit based upon a valid relationship to the petitioner. 8 U.S.C. § 1154(b). If USCIS determines that the facts of the petition are true and the alien beneficiary is an immediate relative of the petitioner as defined by statute, then USCIS *must* approve the petition and notify the Department of State. *Id.* The Department of State then authorizes the consular official in the alien's country to grant the preference status. *See Bolvito v. Mukasey,* 527 F.3d 428, 430–32 n. 4 (5th Cir.2008) ("the approval of Form I–130 results in the beneficiary of the petition being classified ... for purposes of issuing a visa for admission to the United States; it does not grant a visa or permanent resident status.")

The granting of the petition does not result in a visa being immediately issued to the alien. Congress has limited the number of visas that the government will grant each year depending on the beneficiary's relationship to the petitioner and on the beneficiary's country of origin. 8 U.S.C. § 1151(a)(1) and (c). For example, Congress may provide that each year, 65,000 immigrant visas will be available for petitions based on a sibling relationship, where

---

**2.** Much of this discussion is derived from Defendants' explanation of the relevant background (Mot. at 6–7), as well as the Court's independent review of the statutory framework.

the alien beneficiary is from India. The Department of State makes this number of immigrant visas available and issues them "to eligible immigrants in the order in which a petition in [sic] behalf of each such immigrant is filed ..." 8 U.S.C. § 1153(e). Thus, an alien may have to wait several years before a visa number will become available to him or her under the numerical allocation system. *See Ogbolumani v. USCIS*, 523 F.Supp.2d 864, 869–70 (N.D.Ill.2007) ("due to oversubscriptions in that visa preference category, visa numbers might not be immediately available for the alien relative"). For this reason, the priority date assigned to the alien beneficiary, which is established by the date the petition is filed, is very important.

### B. The Authority to Revoke Approved Visa Provisions and Humanitarian Reinstatement

Congress has vested the Secretary of Homeland Security with discretion to revoke an approved visa petition. Specifically, 8 U.S.C. § 1155 provides in its entirety:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title [relating to family-based immigrant visas, among others]. Such revocation shall be effective as of the date of approval of any such petition.

If an approved petition is revoked, this does not prevent the original petitioner or another family member from filing a subsequent petition on the alien's behalf; however, the subsequent petition will have a new, later priority date. In other words, the alien will have lost his place in the visa line.

Section 1155[3] does not state any grounds for revocation of a petition other than "good and sufficient" cause; however, the Secretary has promulgated regulations that delineate specific situations in which revocation will be automatic. 8 C.F.R. § 205.1(a).[4] Under these regulations, if the petitioning family member dies after the petition has been approved but before the time in which a visa becomes available to the alien beneficiary, the petition is automatically revoked. 8 C.F.R. § 205.1(a)(3)(i)(C). This is what happened here—upon Najma Sheikh's death, the November 1991 Petition for Plaintiff Saaedahmed was automatically revoked.

However, the regulation also provides that USCIS *may* reinstate a petition revoked by death if: (1) USCIS "determines, *as a matter of discretion exercised for humanitarian reasons in light of the facts of a particular case,* that it is inappropriate to revoke the approval of the petition"; and (2) the beneficiary asks for reinstatement and establishes that a person related to the beneficiary (in one of the was specified by statute) is willing and able to file an affidavit of support as a substitute sponsor. 8 C.F.R. § 205.1(a)(3)(i)(C)(2) (emphasis added). This process is known as "humanitarian reinstatement."

### C. The Effect of Public Law 107–150, 8 U.S.C. § 1183a(f)(5)

On March 13, 2002, Congress passed Public Law 107–150, otherwise known as

---

**3.** All future section references are to Title 8 of the United States Code, unless otherwise stated.

**4.** The Secretary's authority to promulgate such regulations comes from 8 U.S.C. § 1103. Section 1103 provides that the Secretary of Homeland Security is "charged with the administration and enforcement of this chapter [which includes the statutes relating to family-based petitions] and all other laws relating to the immigration and naturalization of aliens," and provides that he "shall establish such regulations ... as he deems necessary for carrying out his authority under this chapter." 8 U.S.C. §§ 1103(a)(1) and (3).

the Family Sponsor Immigration Act of 2002. Although the Act recognized US-CIS's existing regulatory authority to grant humanitarian reinstatement, it did not alter or affect such authority in any way. Both parties mention Public Law 107–150, and clearly view it as relevant to the resolution of Defendants' Motion, however, neither adequately explains its purpose. Such an understanding is critical here.

Under the INA, 8 U.S.C. § 1182(a)(4)(C), an alien who seeks permanent residence as an immediate relative or family preference immigrant, like Plaintiff Saaedahmed, is inadmissible to the United States as an alien likely to become a public charge, unless the petitioning family member submits an affidavit of support. Thus, whomever petitions on behalf of the alien relative must pledge to support the alien over a certain threshold income level (125% above the poverty line) in order to avoid section 1182(a)(4)(C). The affidavit of support must comply with the requirements of section 1183a.

Prior to the passage of the Family Sponsor Immigration Act, section 1183a(f)(1)(D) required the visa petitioner to be the "sponsor" who signed the affidavit of support. Although the statute also allowed for a "joint sponsor" to accept joint and several liability if the petitioner could not meet the income requirements, the petitioner himself or herself still had to be a signatory. 8 U.S.C. § 1183a(f)(5).

The result of these requirements was, as a practical matter, to eliminate the use of humanitarian restatement. That is, although 8 C.F.R. § 205.1(a)(3)(i)(C) allowed USCIS to reinstate an I–130 Petition after the petitioner's death for humanitarian reasons, the reinstatement served no purpose because the visa petitioner, who was

now deceased, could not sign the affidavit of support. As a result, the alien became a public charge and was therefore ineligible for permanent residence.

Public Law 107–150 sought to correct this "glitch" and "unintended quirk" in the system. 147 Cong. Rec. H4395–01, 2001 WL 826155 (July 23, 2001). The Act amended the definition of "sponsor" in 1183a(f) to include a family member[5] of the alien beneficiary who was not the original petitioner but who "executes an affidavit of support with respect to such alien in a case in which … the [original petitioner] died after the approval of such petition, and the Secretary of Homeland Security has determined for humanitarian reasons that revocation of such petition under section 1155 of this title would be inappropriate." Public Law 107–150, 116 Stat. 74 (Mar. 13, 2002); 8 U.S.C. § 1183a(f)(5)(B)(i). In short, the amendment to section 1183a(f) recognized the Secretary's existing regulatory authority to reinstate a petition for humanitarian reasons when another family member was willing to stand in the shoes of the original petitioner, and provided that, in such cases, the family member would be a "sponsor" and could sign the required affidavit of support. Nothing in the amendments to section 1183a(f)(5)(B) altered USCIS's discretion to grant humanitarian reinstatement under the regulation.

Having now explained the necessary background of this action, the Court turns to the merits of Defendants' motion.

## IV. Subject Matter Jurisdiction

Defendants' sole argument in their Motion to Dismiss is that this Court lacks jurisdiction to review USCIS's decision to deny Plaintiffs' request to reinstate for

---

**5.** Only certain family members qualify under this section, including but not limited to, parents, spouses, siblings, children, and grandchildren. 8 U.S.C. § 1183a(f)(5)(B).

humanitarian reasons the November 1991 I–130 Immigrant Petition on behalf of Plaintiff Saaedahmed's.

## A. Jurisdiction Generally

The Ninth Circuit has noted that, as a general matter, "agency actions are . . . reviewable under federal question jurisdiction, pursuant to 28 U.S.C. § 1331." *Spencer Enters., Inc. v. United States,* 345 F.3d 683, 687 (9th Cir.2003) (citing to *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)) (holding that, except where statutes preclude review, section 1331 confers jurisdiction on federal courts to review agency action). Further, under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, Congress has explicitly consented to judicial review of agency action, save for narrow exceptions, and therefore waived its sovereign immunity in such actions. The section provides, in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensible party.

5 U.S.C. § 702. Thus, the default rule is that this Court has jurisdiction to review USCIS's decision.

Nonetheless, there are two exceptions. Under section 5 U.S.C. § 701(a), the grant of judicial review of agency decisions in section 702 does *not* apply where (1) a statute explicitly precludes judicial review; or (2) agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a). Here, although Defendants focus solely on the second ground—where agency action is committed to discretion by law—both are relevant to the resolution of this Motion.

First, a specific provision of the immigration code, 8 U.S.C. § 1252(a)(2)(B), prohibits the federal courts from reviewing certain discretionary decisions of the Attorney General or the Secretary of Homeland Security.[6] Thus, the Court must determine whether the decision at issue here—the denial of humanitarian restatement—falls within the discretionary actions contemplated by § 1252(a)(2)(B). Second, the Court must also consider whether the decision is properly understood as one in which under the APA, 5 U.S.C. § 702(a)(2), "agency action is committed to discretion by law."

The Court will address each of these jurisdiction-stripping provisions in turn. In conducting this analysis, the Court is guided by "the strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr,* 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *see Montero–Martinez v. Ashcroft,* 277 F.3d 1137, 1141 (9th Cir.2002) ("we should construe narrowly restrictions on jurisdiction.")

---

**6.** Although Defendants did not argue that this Court's judicial review was precluded by 8 U.S.C. § 1252(a)(2)(B), Plaintiffs raised section 1252(a)(2)(B) in their Opposition, arguing that it does not restrict jurisdiction under the circumstances of this case. This Court has an affirmative obligation to consider its subject matter jurisdiction, and must consider whether § 1252(a)(2)(B) divests the federal courts of jurisdiction over this action, regardless of whether Defendants raised the argument in their Motion. *See Spencer Enters., Inc. v. United States,* 345 F.3d 683, 687 (9th Cir.2003).

## B. Whether the IIRIRA and the REAL ID Act, 8 U.S.C. § 1252(a)(2)(B), Precludes Jurisdiction

Through the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and the REAL ID Act of 2005, Congress promulgated the current version of 8 U.S.C. § 1252(a)(2)(B). This section, which is entitled "Matters not subject to judicial review," provides that:

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security *the authority for which is specified under this subchapter [8 U.S.C. §§ 1151–1378] to be in the discretion of the Attorney General or the Secretary of Homeland Security,* other than the granting of relief under section 1158(a) of this title [asylum].

8 U.S.C. § 1252(a)(2)(B) (emphasis added). Thus, judicial review is precluded if: (1) under 1252(a)(2)(B)(i), the decision is made pursuant to one of the enumerated sections; or (2) under 1252(a)(2)(B)(ii), the specific subchapter of the immigration code encompassing sections 1151–1378 gives the Secretary of Homeland Security or the Attorney General discretion to make the decision in question.

To determine whether either section of 1252(a)(2)(B) applies to this case, the Court must focus on the specific decision challenged by Plaintiffs. Here, Plaintiffs are *not* challenging the automatic revocation of Najma Sheikh's I–130 Petition upon her death. Indeed, nowhere in Plaintiffs' Complaint do Plaintiffs allege that USCIS's decision to automatically revoke the Petition upon Najma's death was an abuse of discretion.[7] Instead, Plaintiffs are only challenging USCIS's decision to deny their request to have the Petition reinstated on humanitarian grounds under 8 C.F.R. § 205.1(a)(3)(i)(C)(2). Regulation 205.1(a)(3)(i)(C)(2) is the only basis upon which Plaintiffs sought (or could seek) reinstatement of the Petition, and it is the Defendants' application of "humanitarian grounds" that Plaintiffs contend was an abuse of discretion.[8]

### 1. § 1252(a)(2)(B)(i)

Here, it is clear that subsection (i) does not apply, because the authority to deny humanitarian reinstatement of a revoked visa petition does not come from any of the sections enumerated therein. Indeed, none of the enumerated sections even re-

---

7. Thus, whether the Secretary of Homeland Security was given discretion under 8 U.S.C. § 1155 to revoke an approved visa petition is not relevant to the Court's analysis. Further, even were the Court to consider the Secretary of Homeland Security's revocation power under section 1155, the Ninth Circuit has noted in dicta that section 1155, which allows visa petitions to be revoked for "good and sufficient cause" does not grant the Attorney General "unfettered discretion" because his decision must be supported by substantial evidence supporting the decision to revoke a petition. *Spencer Enters., Inc.,* 345 F.3d at 692 (citing to *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305, 1309 (9th Cir.1984)).

8. This is confirmed by the fact that the only authority cited by Sakil Sheikh in his request for reinstatement, and the only authority cited by USCIS in its Notice of Decision denying such request, is 8 C.F.R. § 205.1(a)(3)(i)(C)(2).

motely relate to the Secretary of Homeland Security's grant, denial, revocation or reinstatement of family preference visas.

### 2. § 1252(a)(2)(B)(ii)

 As to subsection (ii), the Ninth Circuit has narrowly construed that subsection. In *Spencer Enterprises, Inc.*, the Ninth Circuit emphasized that subsection (ii) does not apply to all "discretionary decisions," but rather "to acts the *authority* for which is *specified* under the INA to be discretionary." 345 F.3d at 689 (emphasis in original). The Court further noted that " '[s]pecify' means '[t]o mention specifically'; that is, the language of the statute in question must provide the discretionary authority" for the action in question. *Id.* (quoting Black's Law Dictionary 1399 (6th ed.1990)). Thus, the jurisdictional bar in subsection (ii) only applies where a *statute* enumerated within sections 1151–1378 of the immigration code *explicitly* grants the Attorney General or the Secretary of Homeland Security discretion to make the decision in question. *Medina–Morales v. Ashcroft,* 371 F.3d 520, 528 (9th Cir.2004). Furthermore, the statutory grant of discretion must be "pure" and "unguided by legal standards or statutory guidelines." *Spencer Enters., Inc.,* 345 F.3d at 689–90.

Where the authority to make the decision at issue is not derived from an explicit statute, but rather is contained in immigration regulations, the jurisdictional bar of section 1252(a)(2)(B)(ii) does not apply. For example, in the recent case of *Sandoval–Luna v. Mukasey,* 526 F.3d 1243 (9th Cir.2008), the Ninth Circuit held that 1252(a)(2)(B)(ii) did not apply to an immigration judge's authority to continue a removal case. In so doing, the court adopted the following reasoning of the First Circuit in *Alsamhouri v. Gonzales,* 484 F.3d 117 (1st Cir.2007):

> An immigration judge's authority to continue a case is not "specified under" the subchapter to be in the discretion of the Attorney General. Instead, the grant of discretion is contained in 8 C.F.R. § 1003.29 and related regulations. These regulations were promulgated by the Attorney General to implement statutory provisions that broadly authorize immigration judges to conduct removal proceedings, but do not specifically authorize them to grant or deny continuances. *See, e.g.,* 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."). Indeed, the relevant statutory provisions do not mention continuances, let alone indicate that the granting or denial of continuances by an IJ is "in the discretion of the Attorney General." Therefore, an immigration judge's discretionary decision to deny a continuance is not covered by the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B)(ii).

*Sandoval–Luna,* 526 F.3d at 1246 (citing to *Alsamhouri,* 484 F.3d at 122). Thus, because the immigration judge's authority to continue the removal case was derived solely from regulations, and not from statutory authority, 1252(a)(2)(B)(ii) did not preclude judicial review. The Ninth Circuit reached a similar result in *Medina–Morales v. Ashcroft,* 371 F.3d 520 (9th Cir.2004). In *Medina–Morales,* the issue was whether 1252(a)(2)(B)(ii) barred judicial review of the Board of Immigration Appeals' denial of an alien's motion to reopen removal proceedings. Medina–Morales had indicated during the removal proceedings against him that he intended to file for adjustment of status based on his stepfather's U.S. citizenship. *Id.* at 524. However, when Medina–Morales' stepfather did not appear to testify at the hearing, Medina–Morales withdrew the application for adjustment of status and consented to voluntary departure. *Id.* Two months later, Medina–Morales filed a mo-

tion to reopen the proceedings, citing an affidavit from his stepfather explaining his absence at the earlier proceeding. *Id.* At a hearing on the motion to reopen, however, the stepfather again failed to appear, and the immigration judge denied the motion to reopen the proceedings. *Id.*

The court found that under 8 C.F.R. § 1003.23(b)(3), the Attorney General had broad discretion to grant or deny motions to reopen. *Id.* at 525. However, no "*statute* gives the Attorney General such pure discretion." *Id.* at 528 (emphasis in original). The court noted that 8 U.S.C. § 1229a(c)(6) related to motions to reopen, but merely provided the filing requirements aliens had to meet for such motions, and made "no mention" of discretion. *Id.* "Thus Congress, in enacting § 1229a(c)(6)(C), did not specify that the Attorney General has discretionary authority over motions to reopen." *Id.* The court ultimately concluded that while immigration judges had broad discretion to deny motions to reopen, "this discretion still 'derives solely from *regulations* promulgated by the Attorney General,' rather than from a statute." *Id.* (citing *INS v. Doherty,* 502 U.S. 314, 322, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992)) (emphasis in original). Thus, section 1252(a)(2)(B)(ii) did not preclude judicial review.

In a recent unpublished case, *De Perio v. Gonzales,*[9] 224 Fed.Appx. 588 (9th Cir. 2007), the Ninth Circuit applied this rule to the exact situation confronting the Court here. The court considered whether 1252(a)(2)(B)(ii) precluded judicial review of the USCIS's decision to deny reinstatement for humanitarian reasons of an immigrant visa petition that was revoked due to the petitioner's death. Although the court's analysis is brief, the court unequivocally concluded:

We are not precluded by 8 U.S.C. § 1252(a)(2)(B)(ii) from exercising jurisdiction ... because that statute "applies only to acts over which a *statute* gives the Attorney General pure discretion," ... and thus does not apply to our review of a discretionary decision made pursuant to regulation.

*Id.* at 589 (emphasis in original). Thus, because the USCIS director was granted authority to deny reinstatement of the petition for humanitarian reasons by 8 C.F.R. § 205.1(a)(3)(i)(C), rather than by statute, section 1252(a)(2)(B)(ii) did not apply. *See id.* The court went on to review USCIS's decision under an abuse of discretion standard. *Id.*

█ In light of this authority, the Court concludes that § 1252(a)(2)(B)(ii) does not preclude judicial review of USCIS's decision to deny humanitarian reinstatement for the November 1991 Petition on behalf of Plaintiff Saaedahmed. Here, much like in *Medina–Morales* and *Sandoval–Luna,* the authority granted to the Secretary of Homeland Security to deny a request to reinstate a petition for humanitarian reasons derives solely from regulations. There is not a single statute in sections 1151–1378 of the Immigration and Nationality Act ("INA") that grants the Secretary of Homeland Security any discretion regarding reinstatement of revoked petitions. Instead, as the Ninth Circuit ruled in *De Perio,* such discretion is derived solely from 8 C.F.R. § 205.1(a)(3)(i)(C)(2).

The Family Sponsor Immigration Act of 2002, Public Law 107–150, does not alter this result. As stated above, the Family Sponsor Immigration Act merely amended the definition of "sponsor" in 8 U.S.C.

---

9. Although this opinion is unpublished, under Ninth Circuit Rule 36–3, unpublished Ninth Circuit opinions issued after January 1, 2007, such as *De Perio,* can be cited to the courts of this circuit.

§ 1183a(f)(5) to include a relative who had stepped in the shoes of a deceased petitioner in cases where the Secretary of Homeland Security had granted humanitarian reinstatement. In other words, the Act simply recognized and gave practical effect to the humanitarian reinstatement process already in place under 8 C.F.R. § 205.1(a)(3)(i)(C)(2). Nothing in statutory language of § 1183a(f)(5) alters in any way the Secretary's already existing discretion to grant humanitarian reinstatement under the regulation.[10] As the Ninth Circuit confirmed in *Medina–Morales*, section 1252(a)(2)(B)(ii) does not preclude review where a statute simply *relates to* the discretionary decision at issue; rather, the statute must be the specific vehicle that grants the immigration official discretion in the first instance.

In sum, because the USCIS's authority to make the challenged decision was not derived from a specific statute in the immigration code, section 1252(a)(2)(B)(ii) does not strip this Court of subject matter jurisdiction to hear Plaintiffs' claim.

### C. Whether the APA, 5 U.S.C. § 701(a)(2), Precludes Jurisdiction

Section 701(a)(2) of the APA precludes review of agency decisions where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Defendants argue that this section precludes judicial review of the USCIS's decision in this action because 8 C.F.R. § 205.1(a)(3)(i)(C) grants the USCIS complete unfettered discretion to deny reinstatement of I–130 Petition on humanitarian grounds. Plaintiff disagrees, arguing that agency discretion was sufficiently limited by internal policies guiding the humanitarian reinstatement decision.

### 1. Whether the grant of discretion under 701(a)(2) must be statutory

■ Before addressing the parties' arguments, a threshold issue that neither of the parties have addressed in this Motion is the meaning of the term "by law" in section 701(a)(2). That is, whether section 701(a)(2) operates to preclude jurisdiction only where, like the immigration code section, a specific statute grants the agency discretion, or alternatively, whether it applies to instances in which discretion is established solely through regulations or agency practice.[11] This issue is critical

10. Indeed, the Immigration and Naturalization Service's (INS) internal 2002 Memorandum of Regional Directors regarding the effect of the Family Sponsor Immigration Act confirms this:

The INS is not required in any given case to reinstate approval of a visa petition. Reinstatement continues to be a matter of discretion, to be exercised in light of the facts of each individual case, particularly those cases in which failure to reinstate would lead to a harsh result contrary to the goal of family reunification. *Should the INS reinstate a petition* following the death of the visa petitioner § 213A(f)(5)(B) [8 U.S.C. 1183a(f)(5)(B)] and § 212(a)(4)(C)(ii) now allow the use of a "substitute" sponsor to sign [the affidavit of support]
. . . .

(Plaintiffs' Opposition to Motion to Dismiss, Attachment, pg. 13 [INS Memorandum for Regional Directors, dated June 15, 2002].)

Additionally, *De Perio* was decided after the enactment of the Family Sponsor Immigration Act, and the Ninth Circuit did not consider 8 U.S.C. § 1183a(f)(5)(B) as a statute granting the Secretary of Homeland Security discretion to reinstate a petition for humanitarian reasons.

11. It is clear that the Court may look to nonstatutory authority when determining the limits of the agency's discretion—i.e., whether the discretion given is broad and unfettered versus limited and circumscribed. Regulations or agency practice certainly can operate *to restrict* a grant of discretion, and this will be discussed further in the following section. Nonetheless, the first issue the Court must resolve is whether the vehicle through which the agency is granted discretion in the first instance must be a statute. In other words, are all grants of discretion treated equally under section 701(a)(2), whether they be statutory, regulatory or otherwise.

here, because as explained above, there is no statutory basis for the USCIS's decision to deny humanitarian reinstatement of an I–130 Petition.

At first blush, the wording of section 701(a)(2) appears to suggest that the grant of discretion must be statutory. The section specifically states that discretion must be committed to the agency "by law"—i.e., by some provision that has legally binding effect. Indeed, in the seminal Supreme Court case *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Court held that under section 701(a)(2), "review is not to be had if the *statute* is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have committed the decisionmaking to the [agency]." *Id.* at 830, 105 S.Ct. 1649 (emphasis added). By making an explicit reference to a "statute" as "law," the Court may have implied that non-statutory grants of discretion would fall outside the ambit of 701(a)(2). However, the Court's reasoning may also simply be a result of the fact that, in *Heckler*, the Defendants had statutory authority to make the decision at issue.

Policy reasons may also suggest that a limit on section 701(a)(2) exists to preclude review only where Congress specifically granted an agency discretion to act. In other words, Congress may have enacted section 701(a)(2) to prohibit jurisdiction only in those instances in which Congress itself bestowed discretion upon an agency. Were the rule otherwise, an agency could, by way of regulations implementing broad statutory powers, strip the federal courts of jurisdiction by granting themselves unfettered discretion to make certain decisions.

Despite these concerns, however, the Ninth Circuit has clearly applied section 701(a)(2) in cases where the agency had discretion to act purely as a result of regulatory authority or agency policy. For example, in *Ekimian v. INS*, 303 F.3d 1153 (9th Cir.2002), the Ninth Circuit applied section 701(a)(2) to the Board of Immigration Appeals' (BIA) refusal to reopen *sua sponte* a deportation proceeding. *Id.* at 1156. The Court clearly noted that: "[N]o statutory language authorizes the BIA to reopen a deportation proceeding *sue sponte*. The only basis of any BIA authority to reopen *sua sponte* is found in 8 C.F.R. § 3.2(a)." *Id.* at 1157. Nonetheless, although the BIA's authority derived from a regulation, section 701(a)(2) still applied. The Court evaluated whether the regulatory grant of discretion was sufficiently broad so as to preclude judicial review of the decision under section 701(a)(2). *Id.* at 1157–58. It ultimately answered this question in the affirmative. *Id.*

Similarly, in *Diaz–Covarrubias v. Mukasey*, 551 F.3d 1114 (9th Cir.2009), the Ninth Circuit applied section 701(a)(2) to the BIA's denial of an alien's request for "administrative closure" of her removal case until an immigrant visa became available to her. The court found that there was "no statutory [or] regulatory basis for administrative closures." *Id.* at 1118. Instead, the authority for administrative closure came solely from past BIA decisions in which immigration judges or the BIA removed cases from its docket as a matter of "administrative convenience." *Id.* at 1116–18. Nonetheless, the Court applied section 701(a)(2) to the practice of administrative closure. The Court concluded that the BIA had broad discretion to decide whether to "administratively close" a removal case; thus, section 701(a)(2) precluded review. *Id.* at 1119.

In applying section 701(a)(2) to a regulatory grant of authority in *Ekimian*, and to the judicially-created practice of adminis-

trative closure in *Diaz–Covarrubias*, the Ninth Circuit has clearly indicated that a grant of agency discretion "by law," need not be statutory. Several other circuits have also applied section 701(a)(2) to non-statutory grants of agency discretion. *See e.g., Luis v. INS,* 196 F.3d 36, 41 (1st Cir.1999) (applying section 701(a)(2) to the BIA's decision not to reconsider *sua sponte* its denial of a motion to reopen deportation hearings under its regulatory authority, 8 C.F.R. § 3.2(a)); *Purveegiin v. Gonzales,* 448 F.3d 684, 688–89 (3d Cir. 2006) (applying section 701(a)(2) to a regulatory grant of discretion regarding the number of judges on a BIA review panel, and concluding that the such discretion was limited); *Ngure v. Ashcroft,* 367 F.3d 975, 982–85 (8th Cir.2004) (applying section 701(a)(2) to a series of "streamlining regulations" for immigration appeals that allowed for the BIA to affirm certain decisions without written opinions).

In sum, section 701(a)(2) is not limited to situations in which a statute explicitly grants the agency discretion to take the action at issue.

## 2. The Scope of Agency Discretion

■ The exception in section 701(a)(2) to preclude review of actions committed to agency discretion by law is very narrow. The discretion granted to the agency must be complete and unfettered. In *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court held that section 701(a)(2) only applies where the statute is drawn in such broad terms "so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," and "in a given case there is no law to apply." Further, the Court emphasized that "such a situation only occurs in 'rare instances.'" *Spencer Enters., Inc.,* 345 F.3d at 688 (quoting *Heckler,* 470 U.S. at 830, 105 S.Ct. 1649). "Even where statutory language grants an agency 'unfet-

tered discretion,' [the agency's] decision may nonetheless be reviewed if regulations or agency practice provide a 'meaningful standard by which th[e] court may review its exercise of discretion.'" *Id.* at 688 (quoting *Socop–Gonzalez v. INS,* 208 F.3d 838, 844 (9th Cir.2000)); *see Padula v. Webster,* 822 F.2d 97, 100 (D.C.Cir.1987) ("Judicially manageable standards may be found in formal and informal policy statements and regulations as well as in statutes, but if a court examines all these possible statements and concludes that there is, in fact, 'no law to apply,' judicial review will be precluded.").

■ Here, the Court finds that there is adequate "law to apply" and a meaningful standard by which the Court can review USCIS's denial of humanitarian reinstatement of the I–130 Petition on Plaintiff's behalf. First, the regulation allowing for humanitarian reinstatement, 8 C.F.R. § 205.1(a)(3)(i)(C)(2), contains language that restricts USCIS's discretion. Second, and perhaps more importantly, USCIS has adopted a long-standing agency practice of considering seven specific factors when evaluating an I–130 Petition for humanitarian reinstatement.

### i. Language of the Regulation

First, although there is no statutory language relating to USCIS's authority to grant humanitarian reinstatement, the language of 8 C.F.R. § 205.1(a)(3)(i)(C)(2) is narrow enough to provide "law to apply." The regulation provides that an I–130 Petition will be revoked upon the petitioner's death, unless USCIS determines for "humanitarian reasons in light of the facts of a particular case" that such action would be inappropriate. 8 C.F.R. § 205.1(a)(3)(i)(C)(2). Thus, the regulation clearly contemplates that USCIS's decision will be based on an examination of *the facts* of the *particular case,* rather than

on, for example, broader policy considerations or administrative convenience. Further, the requirement that USCIS consider "humanitarian reasons" also restricts USCIS's decision, by precluding, for example, a decision based on procedural reasons, such as the timing of the alien's request for reinstatement. Although the term "humanitarian reasons" is undoubtedly broad, it nonetheless offers a meaningful restraint on USCIS's decision. *See, e.g., Keating v. Fed. Aviation Admin.,* 610 F.2d 611, 612 (9th Cir.1980) (holding that the APA did not bar judicial review of a statute which stated that exemptions to the FAA Age 60 Rule [12] could be granted if doing so was "in the public interest," because the " 'public interest' standard provides law to be applied by the administrator sufficient to permit judicial review"); *Spencer Enters., Inc.,* 345 F.3d at 692

(stating in dicta that a statute which allows visa petitions to be revoked for "good and sufficient cause" does not grant the Attorney General "unfettered discretion" because his decision must be supported by substantial evidence supporting the decision to revoke a petition) (citing to *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305, 1309 (9th Cir.1984)).[13]

This conclusion is further supported by a comparison of 8 C.F.R. § 205.1(a)(3)(i)(C)(2) with numerous other immigration code sections in which the Secretary of Homeland Security or the Attorney General's discretion is completely without bounds. *See, e.g.,* 8 U.S.C. § 1184(q)(3) ("The status of an alien ... may be adjusted by the Attorney General, *in the discretion of the Attorney General and under such regulations as the Attorney General may prescribe* " (emphasis

---

**12.** The FAA Age 60 Rule in existence at the time of *Keating* provided that persons were ineligible to pilot passenger airlines once they reached age 60. 610 F.2d at 612.

**13.** Nor is this Court's review precluded by the fact that the language of 8 C.F.R. § 205.1(a)(3)(i)(C)(2) is permissive, rather than mandatory. That is, Defendants presumably could argue that, in light of the way the regulation is worded, even if humanitarian reasons supported reinstatement of the I–130 Petition, the USCIS was not *required* to reinstate the petition. This argument fails for two reasons. First, the regulation states that revocation is automatic upon the petitioner's death *"unless* USCIS determines as a matter of discretion for humanitarian reasons" that revocation is inappropriate. Thus, at the very least, the regulation appears to mandate that USCIS would undergo such a determination where reinstatement is requested, and that the reinstatement determination would be based on humanitarian reasons.

 Second, the Ninth Circuit rejected a similar argument in *Newman v. Apfel,* 223 F.3d 937 (9th Cir.2000). In *Newman,* the Court considered a statute relating to Social Security benefits which provided: "If the Commissioner of Social Security determines that reliable information is currently available with respect

to the income and other circumstances of an individual for a [particular] month ... the [SSI] benefit amount of such individual ... *may be determined on the basis of such information* [rather than on the individual's monthly income two months before]." *Id.* at 939 (citing to 42 U.S.C. § 1382(c)) (emphasis in original). The plaintiffs challenged a regulation enacted by the Commissioner that defined and interpreted the statutory terms "reliable" and "currently available." Plaintiffs argued that the Commissioner's interpretation was arbitrary and capricious. *Id.* at 943.

 In response, the Commissioner argued that plaintiff's challenge was irrelevant, because the statute provided that even if "reliable" and "currently available" information existed, the Commissioner could choose to ignore it— i.e., benefits *"may be determined* on the basis of such information." *Id.* at 939, 943 (emphasis added). The court flatly disagreed. The Ninth Circuit held that "the fact that an agency has broad discretion in choosing whether to act does not establish that the agency may justify its choice on specious grounds. To concede otherwise would be to disregard entirely the value of political accountability, which itself is the very premise of administrative discretion in all its forms." *Id.* at 943.

added)); 8 U.S.C. § 1184(c)(6)(F) ("The Attorney General shall give such weight to advisory opinions provided under this section as the Attorney General determines, in *his sole discretion,* to be appropriate." (emphasis added)); 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review"); 8 U.S.C. § 1229b(b)(2)(D) (providing that the determination of credibility and weighing of evidence "shall be within the *sole discretion* of the Attorney General" (emphasis added)); 8 U.S.C. § 1184(d)(1) ("[T]he Secretary of Homeland Security in his discretion may waive the requirement that the parties have previously met in person."). In stark contrast to these sections, which provide unfettered discretion, regulation 8 C.F.R. § 205.1(a)(3)(i)(C)(2) explicitly contemplates that the Secretary of Homeland Security will consider both the facts of petitioner's case and humanitarian concerns when deciding whether to reinstate the Petition. These guidelines are sufficient to support judicial review.

### ii. Agency Practice

Nonetheless, even if the language of the regulation were too broad to meaningfully cabin USCIS's discretion, the agency has adopted a specific policy that directs its officers to consider seven factors when making the humanitarian reinstatement decision. This policy, contrary to Defendants' arguments otherwise, limits USCIS's discretion and provides a meaningful standard to support judicial review.

When USCIS issued its Notice of Decision to Sakil Sheikh denying his request for humanitarian reinstatement of the November 1991 I–130 Petition, it cited to seven factors from the Department of State's Foreign Affairs Manual upon which it based its decision. Specifically, USCIS based its humanitarian reinstatement decision on the following: (1) whether denial of reinstatement would disrupt an established family unit; (2) whether denial would cause hardship to a United States citizen or lawful permanent residence; (3) whether the beneficiary was elderly or in poor health; (4) whether the beneficiary has a lengthy residence in the United States; (5) whether the beneficiary has no home to go to; (6) whether there was undue delay by USCIS or a Consular Officer in processing the visa and the petition; and (7) whether the beneficiary has strong family ties in the United States. (Compl., Exh. I, [Notice of Decision, dated March 17, 2009, at 74–76].) USCIS ultimately concluded that the balance of these factors did not support humanitarian reinstatement of the I–130 Petition on Saaedahmed Sheikh's behalf.

As noted above, the seven factors cited by USCIS come from the Department of State's Foreign Affairs Manual ("Foreign Affairs Manual" or "FAM"). The FAM is published by the Department of State and is publicly available on the Department of State's website. The FAM contains the functional statements, organizational responsibilities, and authorities of each of the major components of the U.S. Department of State, including Consular Officers. *See* U.S. Department of State, Foreign Affairs Manual, available at *http://www. state.gov/m/a/dir/regs/fam/01fam/index. htm.* Regarding humanitarian reinstatement, Chapter 9, section 42.42 directs U.S. consular officers that, where an I–130 Petition has been automatically revoked under 8 C.F.R. § 205.1(a)(3) due to the petitioner's death, and the consular officer believes that the petition warrants consideration for humanitarian reinstatement, "the consular officer *shall* prepare a written memorandum requesting such consideration and forward it with the petition to [the Department of Homeland Security]." 9 F.A.M. 42.42, Procedural Note 2. The FAM then lists the seven factors noted above as the factors that DHS considers in

making the humanitarian reinstatement decision and that should be addressed in the consular officer's memorandum.

USCIS not only cited to these factors in its Notice of Decision to Sakil Sheikh, but also confirmed that these seven factors are *"the same set of factors that USCIS has used to adjudicate these petitions for many years."* (Compl., Exh. I [Notice of Decision, dated March 17, 2009, at 74] (emphasis added).) Thus, USCIS clearly has an established and specific policy by which it evaluates humanitarian reinstatement.

Defendants argue, however, that the FAM does not supply "law to apply" to the humanitarian reinstatement decision. Defendants contend that under Ninth Circuit precedents, the Court may only look to statutes, regulations or controlling case law to evaluate whether USCIS's discretion in this action was broad or limited. (Mot. at 3–4) (citing to *Diaz–Covarrubias v. Mukasey*, 551 F.3d 1114, 1117 (9th Cir. 2009) and *Ekimian v. INS*, 303 F.3d 1153 (9th Cir.2002).) According to Defendants, "agency operating manuals or internal memorandum are [not] legally binding documents;" thus, they are irrelevant to the inquiry of whether there is adequate law by which to meaningfully judge USCIS's decision. (Reply at 3.)

Defendants' argument lacks merit. First, the case law cited by Defendants is inapposite and does *not* address agency policies for purposes of judicial review under the APA. Defendants cite to two cases, *Schweiker v. Hansen*, 450 U.S. 785, 790, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), and *Sierra Club, Inc. v. Commissioner*, 86 F.3d 1526, 1534 (9th Cir.1996), for the proposition that the Court cannot look to agency policy to limit discretion. In *Hansen*, the issue was whether the Social Security Administration (SSA) was estopped from denying benefits to an applicant, where the applicant orally inquired as to whether she was eligible for such benefits and an SSA administrator did not tell her that she was required to file a written application. 450 U.S. at 790, 101 S.Ct. 1468. The court held that the fact that an internal SSA memorandum instructed the administrator to inform applicants of the advantages of a written application did not operate to bind the SSA in the benefits determination. 450 U.S. at 788, 101 S.Ct. 1468. In *Sierra Club*, the Ninth Circuit briefly noted that informal, unpublished opinions of attorneys within the IRS are not binding on the IRS or the Court. 86 F.3d at 1534. *Sierra Club* did not address judicial review under the APA or any challenge to the court's jurisdiction. In sum, Defendants have not cited, and the Court has not found, any cases expressly holding that the court cannot consider established agency policies when determining whether an agency's discretion is subject to meaningful standards.

Moreover, the Ninth Circuit, *including in cases cited by Defendants,* has clearly held that internal agency policy directives or even "agency practice" can supply a meaningful standard by which to review an agency's discretionary act. *See Diaz–Covarrubias*, 551 F.3d at 1119 ("[T]he 'no law to apply' problem under *Heckler* does not arise where there are 'established agency policies' against which to evaluate the agency's action.") (citing to *Alcaraz v. INS*, 384 F.3d 1150 (9th Cir.2004)); *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir.2003) (an agency's decision "may nonetheless be reviewed if regulations or agency practice provide a 'meaningful standard' [for review]"); *Socop–Gonzalez v. INS*, 208 F.3d 838, 844 (9th Cir.2000) ("Similarly, established policies of an administrative agency may provide the law by which to judge an administrative action or inaction.")

In *Alcaraz v. INS*, 384 F.3d 1150 (9th Cir.2004), the Ninth Circuit held that policy directives issued by the Attorney General and other immigration officials could legally circumscribe the Attorney General's otherwise broad discretion to administratively close alien removal cases. *Id.* at 1161. In *Alcaraz*, two alien petitioners were subject to removal. During the removal proceedings, the petitioners applied for suspension of deportation. *Id.* at 1156. The petitioners had been eligible for suspension of deportation at the time they applied for such relief, but became ineligible while their cases were pending by the enactment of the IIRIRA in 1996. *Id.* at 1157. One of the requirements for suspension of deportation was that the petitioners had to have resided in the United States for at least 7 years prior to the filing of their request for suspension of deportation. *Id.* However, certain retroactive provisions of the IIRIRA changed the applicable end-date for measuring the time period during which petitioners had to be present in the United States. *Id.* When the new end-date was applied to petitioners, they were 30 days short of the seven-year requirement. *Id.* The immigration judge denied the petitioners' request for suspension of deportation and ordered them deported to Mexico. *Id.* Petitioners appealed to the Board of Immigration Appeals (BIA).

While petitioners' appeal was pending, the Attorney General and other immigration officials issued policy directives instructing the BIA to administratively close the cases of aliens who, like the Alcarazes, were harmed by the retroactive ineligibility established by the IIRIRA. *Id.* at 1154–56. After closing the removal case, the BIA was directed to allow such petitioners to be placed in a proceeding where they could seek cancellation of removal—a new form of relief under the IIRIRA. *Id.* This process of administrative closure and reopening of the removal proceeding was called "repapering." *Id.* However, despite the Attorney General's policy directives, the BIA failed consider the petitioners for "repapering," and affirmed the immigration judge's decision. *Id.* at 1156.

The petitioners in *Alcaraz* appealed to the Ninth Circuit, arguing that the court had jurisdiction under the APA to review the BIA's failure to consider them for repapering. *Id.* at 1158. The Ninth Circuit held that section 701(a)(2) did not necessarily bar review of petitioner's claim because, although the Attorney General had broad statutory authority to terminate and reinstate removal proceedings, "this discretion ha[d] been legally circumscribed by various memoranda through which the INS implemented its repapering policy." *Id.* at 1161. The court noted that, "[u]nder these circumstances, we find that [the] statute is not drawn in such broad terms that there is no law to apply." *Id.* (citing *Mendez–Gutierrez v. Ashcroft,* 340 F.3d 865, 868 (9th Cir.2003)). Further, the court found that "[t]he legal proposition that agencies may be required to abide by certain internal policies is well-established." *Id.* at 1162 (citing several cases); *see, e.g., Church of Scientology of Calif. v. United States,* 920 F.2d 1481, 1487 (9th Cir.1990) (noting that "an administrative agency is required to adhere to its own internal operating procedures" and analyzing an IRS policy statement in the Policies of the IRS Handbook). The Ninth Circuit ultimately remanded the issue to the agency to consider whether the various memorandum regarding repapering established an agency policy. 384 F.3d at 1162. However, the court was quick to note that the remand "is not intended to foreclose judicial review in the future," and that "[s]hould the BIA find that it was not bound to repaper the Alcarazes ... [they] can again petition for review with this court." *Id.* at 1163 n. 5.

In *INS v. Yueh–Shaio Yang,* 519 U.S. 26, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996), the Supreme Court looked to agency policy when determining the court's jurisdiction to review agency action under the APA. In *Yueh–Shaio,* an alien who was ordered to show cause as to why he should not be deported filed a request for waiver of deportation under 8 U.S.C. § 1251(a)(1)(H). *Id.* at 28, 117 S.Ct. 350. An immigration judge denied the request, and the BIA affirmed. *Id.* The BIA found that although the alien was statutorily eligible for the waiver, it should be denied as a matter of discretion due to the alien's numerous acts of immigration fraud in the past. *Id.*

On appeal to the Ninth Circuit, the alien argued that the BIA abused its discretion in denying him a waiver because the BIA had a long-standing policy of disregarding entry fraud or misrepresentation when considering waivers of deportation, and thus should not have considered the alien's fraud in this case. *Id.* at 31, 117 S.Ct. 350. The United States disclaimed such a policy, and argued that even if such a policy existed, the unmistakable language of the statute granted it complete discretion to deny a waiver of deportation. *Id.* at 32, 117 S.Ct. 350. The Supreme Court disagreed. The Court held that even though the statutory language granted unfettered discretion, "that does not render the INS's practice irrelevant." *Id.* The court explained

> Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy … could constitute action that must be

overturned as "arbitrary, capricious, [or] an abuse of discretion" within the meaning of the Administrative Procedures Act.

*Id.* (citing 5 U.S.C. § 706(2)).

Applying this rule, the Court found that the BIA had an established policy of disregarding entry fraud in waiver determinations, and thus reviewed the BIA's decision under an abuse of discretion standard. *See id.* at 32, 117 S.Ct. 350. The Court ultimately concluded that the INS had not disregarded its general policy under the circumstances of that case.[14] *Id.*; *see also Doe v. United States,* 100 F.3d 1576, 1583 (Fed.Cir.1996) (finding that Treasury regulations or the Customs' Fines, Penalties & Forfeitures Handbook may offer "guidance or constraint" sufficient to guide judicial review of federal agency's determination of a monetary reward for an informant under the Tucker Act); *Padula v. Webster,* 822 F.2d 97, 100 (D.C.Cir.1987) (holding that "an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion," and that whether such policies were deemed to be binding norms depended on "agency intent … ascertained by an examination of the statement's language, the context, and any available extrinsic evidence.")

The undisputed facts introduced in the parties' briefing establish that USCIS had a long-standing practice of considering seven specific factors when making a humanitarian reinstatement decision. US-CIS cited these factors in its Notice of Decision, and told Plaintiffs that it had used these factors to "adjudicate these petitions for many years." (Compl., Exh. I,

---

**14.** Specifically, the INS's policy to disregard "entry fraud" was narrow, and only included fraud connected with the alien's actual time of entry. Yueh–Shaio Yang's numerous and egregious acts of immigration fraud did not meet the INS's narrow understanding of entry fraud for purposes of waiver determinations. *INS v. Yueh–Shaio Yang,* 519 U.S. at 32, 117 S.Ct. 350.

pg. 74–75.) The established policy was recognized in the Department of State's Foreign Affairs Manual, which implicitly directed consular officers to make note of those factors when recommending humanitarian reinstatement to DHS. Further, Defendants have not offered any facts to indicate that the seven-factor test was anything but a established framework that guided USCIS's exercise of discretion in humanitarian reinstatement cases.

In light of USCIS's internal policy, and the specific language of regulation 8 C.F.R. § 205.1(a)(3)(i)(C)(2), the Court holds that there is "law to apply" to USCIS's decision to deny humanitarian reinstatement to Plaintiffs. Thus, this action is not barred by the APA, 5 U.S.C. § 701(a)(2).

## V. Conclusion

For the reasons stated, Defendants' Motion to Dismiss is DENIED. The Court has subject matter jurisdiction to hear the merits of Plaintiffs' claim under 28 U.S.C. § 1331, and the APA, 5 U.S.C. §§ 702, 706.

IT IS SO ORDERED.