**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SARA DIAZ-COVARRUBIAS,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 06-70447

Agency No.
A029-252-915

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 24, 2008—Pasadena, California

Filed January 9, 2009

Before: Consuelo M. Callahan and Sandra S. Ikuta,
Circuit Judges, and Milton I. Shadur,* District Judge.

Opinion by Judge Ikuta

---

*The Honorable Milton I. Shadur, Senior United States District Judge
for the Northern District of Illinois, sitting by designation.

**COUNSEL**

J. Jack Artz, Norwalk, California, for the petitioner.

Sarah Maloney, United States Department of Justice, Washington, D.C., for the respondent.

**OPINION**

IKUTA, Circuit Judge:

Sara Diaz-Covarrubias petitions for review of the BIA's refusal to "administratively close" her case. We hold that we lack jurisdiction to do so, and accordingly dismiss her petition for review.

I

Sara Diaz-Covarrubias ("Diaz") is a thirty-five year-old native and citizen of Mexico who attempted to enter the

United States without inspection in 1990. She was appre-
hended at the border but then released into the United States.
Ten years later, on October 6, 2000, the INS sent Diaz a
Notice to Appear, alleging that she was removable under 8
U.S.C. § 1182(a)(6)(A)(i) as an alien not lawfully admitted or
paroled into the United States.

Diaz conceded removability but applied for cancellation of
removal under 8 U.S.C. § 1229b based on hardship to her
minor daughter (a citizen) and her father (a lawful permanent
resident). The immigration judge (IJ) denied Diaz's applica-
tion for cancellation of removal on September 30, 2004, hold-
ing that Diaz had not established that her removal would
cause "exceptional and extremely unusual hardship" to her
daughter or her father. The IJ granted her application for vol-
untary departure and issued a conditional order of removal in
the event that she failed to voluntarily depart. Diaz then filed
a Notice of Appeal with the Board of Immigration Appeals
(BIA), challenging the IJ's hardship determination.

Before Diaz's appeal brief was due, the United States Citi-
zenship and Immigration Services (USCIS) approved a peti-
tion for alien relative (or "Form I-130 petition") that Diaz's
sister, a United States citizen, had filed five years earlier for
Diaz's benefit. The Immigration and Nationality Act (INA)
allows an immediate relative of a United States citizen to be
issued an immigrant visa or otherwise acquire the status of
lawful permanent resident. 8 U.S.C. § 1151(a), (b)(2)(A)(i).
For an alien to qualify as an immediate relative, a United
States citizen must file a Form I-130 petition on the alien's
behalf, and the petition must be approved by the USCIS. 8
C.F.R. § 204.1(a); *see also Diouf v. Mukasey*, 542 F.3d 1222,
1225 n.1 (9th Cir. 2008). The USCIS's approval of a Form I-
130 petition, however, does not make an alien automatically
eligible for adjustment of status under 8 U.S.C. § 1255(i).
Among other requirements, an immigrant visa must be "im-
mediately available." 8 U.S.C. § 1255(i)(2)(B); *see also
Ngongo v. Ashcroft,* 397 F.3d 821, 823 (9th Cir. 2005). The

wait time for these immigrant visas is considerable: Diaz estimates that a visa will not be available for her until 2013.

In addition to challenging the IJ's denial of her application for cancellation of removal, Diaz asked the BIA for administrative closure of her case until an immigrant visa became available. "Administrative closure" is a procedure by which an IJ or the BIA removes a case from its docket as a matter of "administrative convenience." *In re Gutierrez-Lopez*, 21 I. & N. Dec. 479, 480 (BIA 1996) (quoting *In re Amico*, 19 I. & N. Dec. 652, 654 n. 1 (BIA 1988)). This procedure is not described in the INA or federal regulations, but the BIA has stated that it will not administratively close a case if closure is opposed by either of the parties. *Id.* The record does not indicate that the Department of Homeland Security either opposed or agreed to Diaz's request for administrative closure.

On December 27, 2005, the BIA adopted the IJ's decision in its entirety. The BIA also denied Diaz's request for administrative closure on the ground that "her eventual adjustment of status is still speculative at this time," because she "has not shown prima facie eligibility" for adjustment of status.

## II

In her petition for review, Diaz does not challenge the BIA's and IJ's hardship determination, which we lack jurisdiction to review in any event. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Romero-Torres v. Ashcroft*, 327 F.3d 887, 891 (9th Cir. 2003). Rather, she argues that the BIA abused its discretion in denying her request for administrative closure. Before we reach the merits of her claim, we must determine whether we have jurisdiction to review the BIA's denial. "[W]e have jurisdiction to determine our own jurisdiction," *Sareang Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000), and an obligation to do so sua sponte, *Spencer Enters. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003).

Although we have not previously addressed our jurisdiction to consider denials of requests for administrative closure, we are guided by our prior decision in *Ekimian v. INS*, 303 F.3d 1153 (9th Cir. 2002), which involved a substantially similar issue. In *Ekimian*, the BIA had denied a motion to reopen on the ground that it was untimely and declined to reopen proceedings sua sponte. On appeal, we upheld the BIA's determination that the motion was untimely. We also considered the petitioners' argument that the BIA abused its discretion by declining to reopen the proceeding sua sponte under 8 C.F.R. § 3.2(a) (now codified at 8 C.F.R. § 1003.2(a), *see* 68 Fed. Reg. 9824, 9830 (Feb. 28, 2003)), which states:

> The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. A request to reopen or reconsider any case in which a decision has been made by the Board, which request is made by the Service, or by the party affected by the decision, must be in the form of a written motion to the Board. The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.

**[1]** Based on the language of the regulation, we determined that we lacked jurisdiction to review the BIA's refusal to reopen the proceeding sua sponte. *See Ekimian*, 303 F.3d at 1157-58. Our determination took into account the following: (1) the federal regulation that allowed the BIA to reopen proceedings sua sponte did "not specify a standard (even a discretionary standard) that the BIA should apply in deciding whether to reopen"; (2) "no statutory language authorizes the BIA to reopen a deportation proceeding *sua sponte*"; and (3) no precedential BIA decision specified a standard for exercising its sua sponte authority to reopen. *Id.* (italics in original). Although a prior BIA decision, *In re J-J-*, 21 I. & N. Dec. 976

(BIA 1997), had stated that the Board had the authority "to reopen proceedings sua sponte in exceptional situations," we held that "an acknowledgment by the BIA that it may reopen proceedings, and a statement that it will do so under 'exceptional situations,' without more," did not give us the jurisdiction to review the BIA's decision for abuse of discretion. *Ekimian*, 303 F.3d at 1157-58 (quoting *In re J-J-*, 21 I. & N. Dec. at 984). In this regard, we noted that "the BIA provided no explanation as to what constitute 'exceptional situations'— except that the facts in *In re J-J-* failed to describe them." *Id.* at 1158. We therefore concluded: "Because we cannot discover a sufficiently meaningful standard against which to judge the BIA's decision not to reopen under § 3.2(a), we hold that we do not have jurisdiction to review the Ekimians' claim that the BIA should have exercised its sua sponte power." *Id.* at 1159.

**[2]** In reaching this conclusion, we also took guidance from *Heckler v. Chaney*, 470 U.S. 821 (1985), which held that section 701(a)(2) of the Administrative Procedure Act (precluding review of an "agency action . . . committed to agency discretion by law") barred judicial review of the FDA's refusal to bring enforcement actions to prevent the use of lethal-injection drugs in executions. *See* 470 U.S. at 832 ("[A]n agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)."). We read *Heckler* as "[e]mphasizing that agencies are better equipped than courts to prioritize administrative concerns and actions," and noted the Court's determination that:

> even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. . . . [I]f no judicially

> manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

*Ekimian*, 303 F.3d at 1158 (omissions and alterations in original) (quoting *Heckler*, 470 U.S. at 830). Other circuits have similarly applied *Heckler* to hold that the absence of a "meaningful standard" precludes review of the BIA's refusal to reopen a case sua sponte. *See Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 249 (5th Cir. 2004) (also quoting *Ekimian*'s requirement that there be a "sufficiently meaningful standard"); *Belay-Gebru v. INS*, 327 F.3d 998, 1000-01 (10th Cir. 2003) (also citing *Ekimian*); *Luis v. INS*, 196 F.3d 36, 41 (1st Cir. 1999) (holding that under *Heckler* the court lacked jurisdiction to review the BIA's refusal to reopen sua sponte because "[t]here are no guidelines or standards which dictate how and when the BIA should invoke its sua sponte power").

**[3]** Applying *Ekimian* leads to the same conclusion in this case. First, as in *Ekimian*, there is no statutory basis for administrative closures. Nor is there any regulatory basis for administrative closures. Moreover, the BIA has not set forth any meaningful standard for exercising its discretion to implement an administrative closure. Under the handful of cases considering administrative closures, the BIA has stated only that administrative closure is an "administrative convenience," and "[a] case may not be administratively closed if opposed by either of the parties." *In re Gutierrez-Lopez*, 21 I. & N. Dec. at 480. This language does not provide any guidance to the BIA regarding when it should exercise its discretion to grant administrative closure. Indeed, it gives even less guidance than the BIA's statement that it could reopen proceedings sua sponte "in exceptional situations," which we found insufficient to allow review in *Ekimian*. *Id.* at 1157. Accordingly, we must conclude that "[b]ecause we cannot discover a sufficiently meaningful standard" for evaluating the BIA's decision not to close a case, we lack jurisdiction to

review Diaz's claim that the BIA abused its discretion in not doing so. *Id.* at 1159.

*Alcaraz v. INS*, 384 F.3d 1150 (9th Cir. 2004), is not to the contrary. In *Alcaraz*, we considered the situation of two petitioners who had been statutorily eligible for suspension of deportation at the time they applied for such relief, but who were subsequently made ineligible by the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *Id.* at 1152-53. Implementing the authority provided by IIRIRA, the Attorney General issued policy directives instructing the BIA to administratively close the cases of aliens harmed by this retroactive ineligibility and allow them to be placed in removal proceedings where they could seek cancellation of removal. *Id.* at 1154 (referring to this procedure as "repapering"). In determining whether we had jurisdiction to review the BIA's failure "to consider [the petitioners] for repapering," we acknowledged that, under the reasoning of *Heckler v. Chaney*, we lack jurisdiction "where statutes are drawn in such broad terms that in a given case there is no law to apply." *Id.* at 1153, 1161. In *Alcaraz*, however, we held that the Attorney General's broad discretion "has been legally circumscribed by various memoranda through which the INS implemented its repapering policy." 384 F.3d at 1161. We concluded that the "no law to apply" problem under *Heckler* does not arise where there are "established agency policies" against which to evaluate the agency's action. *Id.* (quoting *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003). We therefore held that we had jurisdiction to review the denial of administrative closure in the repapering context. *Id.*

The present case is different. The detailed policy directives at issue in *Alcaraz* have no application to Diaz's case. As noted above, there is no law to apply, either in the form of an "established agency polic[y]" or otherwise. *Alcaraz*, 384 F.3d at 1161. And as *Alcaraz* itself explained, we lack jurisdiction to review an agency's decisions under such circumstances. *Id.*

Nor does *Sandoval-Luna v. Mukasey*, 526 F.3d 1243 (9th Cir. 2008)*,* require a contrary conclusion. In *Sandoval-Luna*, we considered whether we had jurisdiction over an IJ's decision to deny a petitioner's request for a continuance. *See id.* at 1246. The government argued that we lacked jurisdiction to consider this issue under 8 U.S.C. § 1252(a)(2)(B)(ii), which states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General." We rejected this argument, instead adopting the reasoning of the First Circuit: namely, that § 1252(a)(2)(B)(ii) was inapplicable because the IJ's authority to continue a case is contained in 8 C.F.R. § 1003.29 and related regulations, rather than in the "subchapter" of the INA referred to in § 1252(a)(2)(B)(ii). *Sandoval-Luna*, 526 F.3d at 1246 (citing *Alsamhouri v. Gonzales*, 484 F.3d 117, 122 (1st Cir. 2007)).

*Sandoval-Luna* does not direct our decision in this case. Regardless whether § 1252(a)(2)(B)(ii) or other statutes affect our jurisdiction to review denials of administrative closure, *Ekimian* requires us to determine whether there is a legal standard to apply in evaluating the BIA's action or inaction. We did not consider this question in *Sandoval-Luna* because a continuance is governed by a meaningful standard: an IJ may grant a motion for a continuance "for good cause shown." 8 C.F.R. § 1003.29; *accord Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988) (holding that an alien has demonstrated "good cause" if a continuance is necessary to protect an alien's procedural rights, and that the BIA abuses its discretion if it denies a motion in those circumstances). By contrast, Diaz has not pointed to *any* standard that the BIA could have misapplied in denying her request for administrative closure, much less a "sufficiently meaningful" standard as required under *Ekimian*. 303 F.3d at 1159.

Because our analysis in this case is governed by *Ekimian*, we do not follow the Sixth Circuit's determination in *Garza-*

*Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007), that it had jurisdiction to review a denial of administrative closure by the BIA. In that case, the Sixth Circuit held that neither § 1252(a)(2)(B)(ii) nor § 1252(g)[1] precluded its review of a denial of administrative closure. *See id.* at 242 & n.2. The Sixth Circuit did not address the question whether there were meaningful standards to apply. *See Heckler v. Chaney*, 470 U.S. at 830. But we are bound by *Ekimian* to consider this issue.

## III

**[4]** "Because we cannot discover a sufficiently meaningful standard against which to judge the BIA's decision," *Ekimian*, 303 F.3d at 1159, we lack jurisdiction to review the BIA's denial of Diaz's request for administrative closure.[2] Accordingly, Diaz's petition for review is **DISMISSED**.

---

[1] Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under" the Immigration and Nationality Act.

[2] We therefore do not reach the merits of Diaz's argument that the BIA erred in concluding that Diaz's ability to later obtain adjustment of status was "speculative," or her argument that the BIA's refusal to administratively close her case violated 8 C.F.R. § 1240.11(a)(2) and (e) by denying her the opportunity to apply for adjustment of status based on her sister's approved Form I-130 petition.